[No. 1259, July 1, 1909.]

W. L. SEARS, Appellee, v. JOHN FEWSON, Appellant.

SYLLABUS (BY THE COURT.)

The Territorial Statute, Chapter 96, Laws of 1884, as amended by Chapter 42, Laws of 1887, requiring the owners of cultivated lands in Lincoln County to protect them with fences of a prescribed kind and making the right to recover damages from the owners of animals injuring the crops on such lands depend on the maintenance of fences required by the law, is not invalid as a special law in contravention of the Act of Congress of July 30, 1886, known as the "Springer Act," nor has it been repealed or rendered void by section 144 of the Compiled Laws of 1897, or Chapter 73 of the Laws of 1903.

Appeal from the District Court for Chaves County, before W. H. Pope, Associate Justice. Reversed.

W. C. Reid and W. A. Dunn for Appellant.

.Mere similarity in the provisions of two statutes is not enough to effect a repeal., 26 A. & E. Enc. of Law 732; Chapter 73, Laws of 1903; Sections 144-151, C. L. 1897; Chapter 92, Laws of 1901; Cooley Const. Lim., 6th ed. 182; Suth. St. Const., secs. 138, 160; U. S. v. Clafin, 97 U. S. 546; Hudson Furniture Co. v. Freed Furniture and Carpet Co., Utah, 36 Pac. 132; People v. McAllister, Utah, 37 Pac. 578.

Chapter 73, Laws of 1903, was not intended to, and did not repeal Chapter 96, Laws of 1884, as amended by Chapter 42, Laws of 1887, and Chapter 35, Laws 1897. Cooley Const. Lim., 6th ed. 182; Wilburn v. Territory, N. M., 62 Pac. 968.

The running at large of livestock and provisions for protection against their trespasses, varying in different localities, are police regulations which the territorial legislature has a right to adopt. Johnson v. Mocabee, Okla., 32 Pac. 336; Haigh v. Bell, W. Va., 31 L. R. A. 131.

Where crops are planted distant from settlements, and in common pasture grounds, the failure to protect such crops, by fence or otherwise, precludes any relief to the owner of such crops for damages committed by trespassing animals. Sections 98, 104, C. L. 1897; P. V. & N. E. Ry. Co. v. Cazier, N. M., 79 Pac. 714; Buford v. Houtz, 133 U. S. 320; Gerhardt v. Lusman, et al, in District Court for Guadalupe County, Civil Case No. 151.

A herd or fence law is not one of the subjects of special legislation, specifically mentioned or prohibited in the "Springer Act." Guthrie National Bank v. Guthrie, 173 U. S. 528; State v. County Court, 11 Am. Rep. 415, 50 Mo. 317; State v. Hitchcock, 1 Kans. 184, 81 Am. Dec. 503; Johnson v. Mocabee, Okla., 32 Pac. 336; 1 Sutherland Stat. Con., 2 ed., sec. 190.

Constitutional provisions against special legislation are prospective and do not apply to or affect the validity of existing statutes. 1 Sutherland's Statutory Construction, 2 ed., sec. 190; Nevada School District v. Shoecraft, 88 Cal. 372, 26 Pac. 211; Smith v. McDermott, 93 Cal. 421, 29 Pac. 34; Piper v. Gunther, 95 Ky. 115, 23 S. W. 872; Pearce v. Mason Co., 99 Ky. 357, 35 S. W. 1112;

Sears v. Fewson.

Black River Imp. Co. v. Holman, 87 Wis. 584, 59 N. W. 126; King v. McAndrews, 104 Fed. 430.

H. M. Dow and NISBET & NISBET, for Appellee.

Chapter 73, Laws of 1903, supersedes and repeals Section 144, C. L. 1897; 26 A. & E. Enc. Law 731; District of Columbia v. Hutton, 143 U. S. 18; Tracy v. Tuffly, 134 U. S. 206; Cook County Natonal Bank v. U. S., 107 U. S. 451; U. S. v. Tynen, 11 Wal. 88, 89; Fish v. Henarie, 142 U. S. 459, 467; King v. Cornell, 106 U. S. 395, 396; Murphy v. Utter, 186 U. S. 95.

Chapter 96, Laws of 1884, as amended by Chapter 42, Laws of 1887, and Chapter 35, Laws of 1897, is not now in force in New Mexico. State v. Supervisors, 25 Wis. 339; Pasadena v. Stimson, 91 Cal. 238; Crabb v. State, 88 Ga. 584; Henderson v. Koenig, 168 Mo. 356; Suth. Stat. Const., sec. 191.

Where the Constitution requires uniformity in respect to any matter or thing, a law passed to carry out the provision will repeal all inconsistent local and special laws on the subject. Suth. Stat. Const., sec. 279; McTigue v. Commonwealth, Ky., 35 S. W. 121; Commonwealth v. Wunch, Pa., 31 Atl. 551; Chalfant v. Edwards, Pa., 34 Atl. 922; Haynes v. Cape May, N. J., 19 Atl. 176; Chidsey v. Scranton, 70 Miss. 449; Howard v. Hulbert, 63 Kan. 793.

STATEMENT OF THE CASE.

This suit was filed in the District Court of Chaves County on the 7th day of December, 1908, and was at once brought to issue and an agreed statement of facts filed. It appears from the complaint and from such agreed statement, that the plaintiff, here the appellee, is the owner and in possession of certain described land, a portion of which he has sown in grain and domestic grasses, there being about twenty acres in cultivation; that said land is unprotected by any fence sufficient to ordinarily turn stock, such as cattle and horses, and defendant's cattle have heretofore trespassed upon and destroyed a portion of the grain and grasses growing thereon; that said tract of land is not situated within or near any irrigated dis-

trict, and the lands surrounding it are composed largely of the public domain of the United States, on which cattle, horses and other stock are running at large; that defendant is the owner of a large number of cattle running at large in the neighborhood of said land which are trespassing thereon, eating up and destroying said crops, and will continue to do so unless defendant is restrained; that such trespasses are of a continuous nature and in order for plaintiff to obtain redress at law he would be forced to maintain a multiplicity of suits. It was agreed that if plaintiff was not required to protect his crops by fence, that he was entitled to relief by injunction; but, otherwise, that his complaint stated no cause of action and the suit should be dismissed at his cost. Defendant, here the appellant, specially pleaded that the relief sought by plaintiff was in contravention of certain local statutes requiring all persons to fence against trespassing animals in Lincoln, Chaves and Eddy Counties; the local statutes pleaded being chapter 96, Session Laws 1884, amended by chapter 42, Laws of 1887, and chapter 35, Laws of 1897. To this special defense the plaintiff demurred, and the cause was submitted to the trial court on the sole question of whether or not the crops should have been protected by a lawful fence in order to render the action maintainable. The court ruled that the demurrer to the answer should be sustained, and the prayer of the complaint be granted. A decree was accordingly entered perpetually enjoining the defendant from permitting his cattle to wander and trespass on the said crops and grasses of the plaintiff. The case is before this court on appeal from that decree and the only question to be determined is that raised by the demurrer as above stated.

### OPINION OF THE COURT.

ABBOTT, J.—That the rule of the common law of England which required every man to keep his beasts in his own close, under penalty of answering in damages for all injuries resulting from their being permitted to range at large, "has nowhere prevailed in the settlement of the newer parts of this country," was affirmed by the Supreme

Sears v. Fewson.

Court of the United States in Buford v. Houtz, 133 U. S., 320, where what may be termed the common law of the west, on the subject, is set forth. As recited in the opinion in that case, "we are of opinion that there is an implied license, growing out of the custom of nearly a hundred years, that the public lands of the United States, especially those in which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them where they are left open and unenclosed, and no act of government forbids this use. * * The government of the United States, in all its branches, has known of this use, has never forbidden it, nor taken any steps to arrest it. No doubt, it may be safely stated that this has been done with the consent of all branches of the government." "Nearly all the states in early days had what was called the fence law, a law by which a kind of fence, sufficient in a general way to protect the cultivated ground from cattle and other domestic animals which were permitted to run at large, was prescribed. The character of this fence in most of the statutes was laid down with great particularity, and unless it was in strict conformity to the statute there was no liability on the part of the owner of cattle if they invaded the enclosure of a party and inflicted injury on him. If the owner of the enclosed ground had his fence constructed in accordance with the requirements of the statute, the law presumed then that an animal which invaded this enclosure was what was called a *breachy* animal, was not such animal as should be permitted to go at large, and the owner was liable for the damages done by him. Otherwise the right of the owner of all domestic animals, to permit them to run at large, without responsibility for their getting upon the lands of his neighbor, was conceded. * * * It is now a matter of occasional legislation in the States which have been created out of this public domain, to permit certain counties, or parts of the State, or the whole of the State, by a vote of the people within such subdivision, to determine whether cattle shall longer be permitted to run at large and the owners of the soil compelled to rely upon their fences for protection, or whether the

cattle owner shall keep them confined, and in that manner protect his neighbor without the necessity on the part of the latter of relying upon fences which he may make for such protection." The same rule was laid down by this court in P. V. & N. E. Ry. v. Cazier, 13 N. M., 131, 79 Pac. 714.

It is, however, claimed in behalf of the appellee, that this rule has been abrogated, or so far modified by statute in this Territory that he is entitled to relief under the circumstances of this case. The statute on which this contention is directly based is chapter 73, Laws of 1903, which provides that "all damage or injury done to any cultivated field sown with grain, corn, vineyard, orchards, alfalfa or other sown domestic grasses, and to all lands fenced as now required by laws in this Territory, shall be paid for by the owners of the animals committing such damage or injury,".etc. It is claimed on one side and denied on the other that this statute repealed section 144 of the Compiled Laws of 1897, which provides that persons owning or having possession of animals which shall "break into the lawful enclosure of another, or shall trespass upon the cultivated fields, or land or lands sown in domestic grasses or clovers for hay or pasture, or upon the orchards or vineyard lands of another when no enclosure of such cultivated fields or land so planted is required by law," shall be liable in damages. In our view of the case, however, that is not a question of essential importance. Section 144, which, with the following sections to 152 inclusive, was enacted in 1873, recognized the prior existence of two classes of cases in which the owners of domestic animals had been made liable in damages for injuries done by them on the lands of others; one, through the breach by them of a "lawful enclosure" of such land, and the other by trespass on cultivated fields, orchard or vineyard lands, when no inclosure of such lands is required by law. Section 152 declared what should be a "lawful fence," and made it essential to the recovery of damages that "it must be proved that the enclosure was a legal fence; that is, it must be so proved in those cases in which an inclosure, is required by law, as recited in sec-

tion 144. The "irrepressible conflict" between the farming and the grazing interests had begun years before, while New Mexico included the greater part of what is now Colorado and Arizona. In 1856 it was declared by law in substance that damage to a "cultivated field" by animals should be recoverable, provided that those planting "in places distant from the settlements, at watering places or in common pasture grounds and neglecting their fields, * * * upon proof of neglect shall not obtain damages." In 1859 it was provided that those who fenced their "gardens and orchards," but no others, might recover for damages done to them by domestic animals "from the fall to the spring," but that in the summer local regulations should govern. In 1882, the right to recover such damages caused by domestic animals within their enclosures was given to any one who should inclose their lands without "crossing any public road * * * following his inclosure along both sides of said road or roads." Other statutes bearing on the subject were, from time to time, enacted and repealed, apparently as the forces of one side' or the other might prevail in the Assembly; but, as we have seen, the Laws of 1873, Sec. 144, C. L. 1897, clearly recognized the principle that in some classes of cases it was necessary to fence lands in order to recover for injuries done on them by animals, and in others not necessary. With the law in that condition, the Assembly in 1884, enacted what is termed, in the discussion of the case at bar, the "Lincoln County Fence Law," Chap. 96, 1884. It was one of several statutes enacted at the same session clearly intended to protect the grazing interests in the portions of the Territory to which they were severally made applicable, and to prevent the owners of cultivated or improved lands from recovering damages for injuries to the crops or other cultivated growths on such lands, unless they were inclosed by lawful fences. By most of these statutes penalties were imposed on the owners of cultivated lands for failure to erect lawful fences. In the Lincoln County Law it was provided that the owners of fences not proving sufficient to stop "the neighbors' animals, shall suffer the consequences of such destruction

and injuries caused in their fields." In a later section of
the act it was declared that those who should fail to erect
lawful fences by the first Monday of January, 1886, should
"suffer the consequences" according to the intent of the act.
Apparently, the statute was enacted in Spanish and its
phraseology in the English translation is not such as
would naturally have been used if it had been originally
put in English. Still there can be no doubt it was the
intention of the Legislature to exempt the owners of do-
mestic animals from liability for damages caused by them
in cultivated fields, at first, whether the fields were fenced
or not, but by amendment, Chapter 42, 1887, the exemp-
tion was limited to fields not enclosed by lawful fences.
The law introduced no new principle into the legislation
of the Territory but added largely to the lands in the first
class we have referred to.

Unless, then, the statute now in question, Chap. 96,
1884, was invalid at the outset, or has since been repealed
or made of no effect, such must be the condition of the
law for Chaves County, which has been formed from what
was then a part of Lincoln County, the statute having
undoubtedly been meant to apply to the Territory included
by the county boundaries adopted as a matter of con-
venience in description and not to the counties themselves
as such.

It is claimed by the appellee that the statute was
invalid, when enacted, because it contravened the "Springer
Act," so called.  Act of Congress, July 30, 1886, C. L.
1897, pp. 45, 46. But it was in existence before the Spring-
er act, which cannot be given a retroactive effect, there
being nothing in it to indicate that such was the inten-
tion of Congress. Cooley Con. Lim. 7th ed., 97; Black
Con. Law 70; Smith v. McDermott, 93 Cal. 421, 29 Pac.
34; Black River Imp. Co. v. Holman, 87 Wis. 584, 59 N.
W. 126. Besides, the Springer act does not in terms or
under the accepted canons of statutory construction for-
bid such legislation. It is claimed for the appellee that
the clause forbidding special legislation by Territorial
legislatures in cases where general legislation is applicable
was violated by the legislation in question. This court

will take judicial notice that in 1884, by far the greater part of this Territory was devoted to grazing purposes and was supposed to be fit for little else. There were, however, portions of the Territory, as, for instance, the Rio Grande Valley, adapted and largely devoted to the production of cultivated crops. It was in the power of the legislature to make special laws appropriate to those differing conditions, and its judgment is final. Guthrie Nat. Bank v. Guthrie, 173 U. S. 528; State v. County Court, 50 Mo. 317, 11 Am. Rep. 415; State v. Hitchcock, 1 Kan. 184, 81 Am. Dec. 503. Although it may have been customary, as intimated in Buford v. Houtz, *supra,* for legislatures to submit the question of fencing to the voters of the several counties, that course cannot be obligatory, in the absence of a constitutional provision requiring it. In the instance now in question, such a submission could have been of no practical use, it being a matter of common knowledge, as suggested in the brief for the appellee, that Lincoln County was then controlled by cattlemen. It is however, contended for the appellee that although chapter 96, of 1884, may not have been directly repealed or annulled by the Springer Act, yet, as a general law on the subject, that of 1873, had been made and was in force, when chapter 96, 1884, was enacted, the latter was in violation of the principle of the provision in the Springer Act, already referred to, that in all other cases where a general law can be made applicable no special law shall be enacted in any of the Territories of the United States," and that in consequence it was rendered void by the prior general law, or, if not by that, then by the general law, Chap. 73, 1903, with both of which, the argument is, it is inconsistent. But as we have already pointed out, the law of 1873 recognized and adopted the pre-existing division of lands into those which the law did and those which it did not require to be fenced, in order to establish liability in damages; and the same is true of the law of 1903, on which the contention of the appellee is especially based.

We find no inconsistency between Chapter 96, 1884, and it, but rather that the earlier law, with others of its kind, is recognized as still existing by the latter law. Again,

by Chapter 55, 1905, the Assembly recognized the two divisions of lands we have pointed out, and by amending the Lincoln County Fence Law by Chapter 35, 1897, declared it to be still in force.

It may be true, as counsel for the appellee state in their brief, that the farming as opposed to the grazing interests have become so great in Chaves County, that the law in question, made in 1884, is now unjust and works a hardship to the farming class. But, if that is the case, it is for the legislature and not for the courts to make such changes in the law as changed conditions may require.

The judgment of the District Court is reversed.

SYLLABUS (BY THE COURT.)