Hill et al. v. Winkler et al., 21 N. M. 5.

[No. 1753, September 24, 1915.]
# HILL et al. v. WINKLER et al.

## SYLLABUS BY THE COURT.

1. There is an implied license, growing out of the custom of nearly 100 years, that the public lands of the United States, especially those in which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them where they are left open and unenclosed, and no act of the government forbids this use.

P. 10

2. During the progress of the settlement of the newer parts of the country the rule that the owner of domestic animals should keep them confined within his own grounds, and should be liable for their trespasses upon unenclosed land of his neighbor, has nowhere prevailed; but, on the contrary, his right to permit them, when not dangerous, to run at large, without responsibility for their getting upon such land of his neighbor, has been universally conceded.

P. 12

3. In proper cases, where the other necessary elements of equitable jurisdiction are present, injunction will lie to restrain a live stock owner from wilfully and knowingly driving or turning his stock upon the unenclosed premises of a private owner.

P. 13

Appeal from District Court, Chaves County; McClure, Judge.

Action by A. D. Hill and another against Joe Winkler and another. From judgment for plaintiffs, defendants appeal. Reversed and remanded, with directions.

REID & HERVEY and GEORGE S. DOWNER, of Roswell, for appellants.

The common law rule that all persons must fence in their live stock does not obtain in this or a majority of the western states.

P. V. & N. E. Ry. Co. v. Cazier, 13 N. M. 131; Sears v. Fewson, 15 N. M. 132; c. 13, L. 1909; c. 70, L. 1909; Walter v. Mullis, 12 Cal. 535, 73 Am. Dec. 561; Wagner v. Visrell, 3 Iowa, 396; McPheeters v. Hannibal, etc., Co., 45 Mo. 22; Campbell v. Bridwell, 5 Oreg. 311; Clarendon, etc., Co. v. McClelland Bros., 89 Tex. 483, 50 Am. St. R. 70; Morris v. Fraiker, 5 Colo. 425; Chase v. Chase, 15 Nev. 259; Darling v. Rogers, 7 Kan. 592; Johnson v. Oreg. Short Line R. R. Co., 63 Pac. 112, 53 L. R. A. 744; N. P. R. R. Co. v. Cunningham, 89 Fed. 594.

The privilege of pasturage on public lands is common to all.

Buford v. Houtz, 133 U. S. 320; Sears v. Fewson, 15 N. M. 132; Healy v. Smith, 14 Wyo. 263, 116 A. S. R. 1004; Taylor v. Buford, 29 Pac. 880; Martin v. Platte Valley Sheep Co., 76 Pac. 571, 78 Pac. 1093; McGinnis v. Friedman, 17 Pac. 635; Hartman v. King, 85 Pac. 382; Herrin v. Seiben, 127 Pac. 323.

Powers of equity will not be invoked for purpose of giving one person an exclusive right to graze his cattle on public domain.

Buford v. Houtz, 133 U. S. 320; Sears v. Fewson, 15 N. M. 132; Healy v. Smith, 116 A. S. R. 1004; Martin v. Platte Valley Sheep Co., 76 Pac. 571, 78 Pac. 1093; Monroe v. Cannon, 24 Mont. 316, 61 Pac. 803; Haskins v. Andrews, 12 Wyo. 458, 76 Pac. 588; Clemmons v. Gillettee, 83 Pac. 879.

Only condition precedent necessary to entitle stock to be turned on open range is that person must have available living water therefor.

Secs. 127 and 128, C. L. 1897.

ASKREN & GILBERT, of Roswell, for appellees.

Section 127, C. L. 1897, is a valid law.

Sec. 7, Organic Act, p. 43, C. L. 1897; Sec. 1850, Act Cong., p. 50, C. L. 1897; Enabling Act, sec. 16; Sec. 4, article 22, N. M. Const.

Possession and use of water was violation of law on appellants' part.

Sec. 6, c. 81, Laws 1912.

It is duty of court to sustain legislative acts.

Baca v. Perea, 42 Pac. 162 (N. M.) ; Douglass v. Lewis, 3 N. M. 596.

In construing statute court will look beyond language used to the intent.

Seidler v. La Fave, 20 Pac. 789 (N. M.) ; Leitsendorfer v. Webb, — N. M. 34, 46.

### REPLY BRIEF OF APPELLANTS.

Insofar as secs. 127 and 128, C. L. 1897, attempt to grant an exclusive right to public domain they are void.

Act Cong. Feb. 25, 1885; c. 149, 23 St. Large, 321; 38 Cyc. 201; Davis v. Beacon, 133 U. S. 333; Allen v. Reed, 60 Pac. 782.

### STATEMENT OF FACTS.

The controversy in this cause grows out of the rival claims by the parties to the pasturage of 10 sections of public domain, constituting a tract about 6 miles long and 1 to 3 miles wide. The plaintiffs in this cause had acquired, about March 31, 1914, certain leases of small tracts of land upon which were situate three wells or springs, being near the boundaries of the body of public

land referred to. The water supply referred to and controlled by plaintiffs was conveniently located and provided a sufficient quantity to water far more live stock than the 10 sections of public land would graze from year to year. The testimony of both parties substantially agreed that the 10 sections of public land produce sufficient grazing to properly sustain from 150 to 200 head of live stock. On the 1st day of March, 1914, the plaintiffs were occupying and using the tract of public domain in question, having about 225 head of live stock grazing thereupon. On March 27, 1914, the defendants and one R. H. Wyatt leased for a term of one year from the 1st day of May, 1914, the N. E. 1/4 of the N. W. 1/4, section 21, township 12 S., range 26 E., and school section 16 of the same township and range. Upon the 40-acre tract first mentioned was an artesian well which had been previously used for irrigation purposes, but which was located near the northern portion of the 10 sections of government land herein referred to. A few days thereafter the defendants removed a portion of the fence about the artesian well, thereby permitting the use of said water by live stock upon the public domain the possession of which is here in controversy. Defendants immediately thereafter placed upon the 10 sections of public land a herd of cattle of about 240 head, and claimed the right to graze such cattle upon the said tract of land during the term for which they have leased, and provided waters from said artesian well.

In addition to the foregoing state of facts, it is contended by appellees that the record discloses that for many years prior to the institution of this suit the 10 sections of land involved were grazed by one Tobe Odem, whose rights have been acquired by appellees, and who have leased the tracts of land and water thereupon from the widow of the said Tobe Odem.

Upon these facts the district court granted the plaintiffs a permanent injunction enjoining the defendants from permitting their cattle to go or graze upon the 10 sections of unenclosed public land, the title to which is in the

·United States of America, and from permitting their cat-tle·to· go upon isolated tracts of land ·leased by the·plain-tiff and to drink. the water from the wells and springs situated on such· leased tracts. ·

## OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.—This ·cause was presented in the trial court upon the issue of whether appellees had a first and prior right to graze the said tract of ,government land by reason of prior occu-pancy thereof, and by reason of the further fact that they had acquired and developed permanent waters in connec-tion therewith for the proper maintenance of such cattle. ·The question is to be disposed of by the consideration of ·the effect and validity of sections 127 and 128, C. L. 1897, which appear at sections 4628 and 4629, Code 1915. These sections are as follows:

"Sec. 4628. Any person, company or corporation that may appropriate and stock a range upon the public domain of the United States, or otherwise, with cattle shall be deemed to ·be in possession thereof: Provided, that such person, com-pany or corporation shall lawfully possess or occupy, or be the lawful owner or possessor of sufficient living, permanent water upon such range for the proper maintenance of such catt'e."

."Sec. 4629. Whenever any person, company or corporation turns loose on any range in this state, already occupied or in the possession of another or others by virtue of their having complied with the provisions of the preceding section, he or they must ·be the owner or owners of. or must be lawfully entitled to the possession of some other living, permanent water upon such range, sufficient for the proper maintenance of all such additional cattle so turned loose, other than that owned by or lawfully possessed, or lawfully in the posses-sion of any other person, company or corporation that may have previously appropriated, stocked, or taken possession of ·such range in ·accordance with the provisions of this and the preceding section; and such person, company or corporation so turning loose cattle upon such range must at all times, furnish, supply and maintain upon such range such other permanent living water free and unfenced and upon the sur-face of the ground."

There is a serious question concerning the right of the Legislature to make provision such as is argued was here made, and this is the basis of the attack by appellants

upon the judgment of the trial court. The first element of this contention is one that scarcely needs the citation of authority to support it. It is that the privilege or right of pasturage upon the public lands of the government which are left open and unenclosed, and are not reserved or set apart for any other purpose, should go to all who wish to enjoy such privilege, or to exercise such right. Sears v. Fewson, 15 N. M. 132, 103 Pac. 268.

[1] The Supreme Court of the United States, in a leading case upon this subject, adhered to the rule just stated, using the following language:

"There is an implied license, growing out of the custom of nearly 100 years, that the public lands of the United States, especially those in which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them, where they are left open and unenclosed, and no act of the government forbids this use" Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618.

With this conclusion we fully agree.

Appellants, therefore, have contended that the statutory provisions above quoted are modifications of this general right of equal privilege in the use of the public domain, and it perhaps might be contended that the Legislature, in the exercise of its police power, might properly regulate the use of the public domain in the manner attempted.

Appellees, assert, however, that the effect of the legislation in question would be to grant an exclusive right to the one first stocking a range upon the public domain in compliance with the conditions of the statute, which would conflict with Act Cong. Feb. 25, 1885, c. 149, 23 Stat. 321. If this be true, of course, the Legislature, in its adoption of the act herein set out, has done a void thing, which must be held to be of no force or effect. The act of Congress referred to is set out in 6 Fed. Stat. Ann. p. 533, the essential portion of which requiring our consideration being:

"The assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any state or any of the territories of the United States,

without claim, color of title, or asserted right as above specified as to inclosure, is likewise declared unlawful, and hereby prohibited."

The asserted right as to enclosure referred to having reference to a previous provision which declares all enclosures unlawful where the person making the same had no claim or color of title, in good faith, based upon an entry of the lands in question at the proper land office under the general laws of the United States, at the time the enclosure was made. The legislative provisions in question were enacted as sections 1 and 2 of chapter 61 of the Laws of 1889, and were therefore passed after the congressional act of 1885 referred to, and it seems clear to us that the attempted granting of an exclusive right in the use of the public domain such as was there attempted would clearly violate the congressional act, and must therefore be held invalid, if that was the intention of the Legislature in the enactment of this act of 1889. We are of the opinion, however, that the two sections of chapter 61 of the Laws of 1889 can be construed as not intending to grant any exclusive right in the use of the public domain, but, on the contrary, as attempting to provide that all those who seek to stock a range upon the public domain must, before doing so, lawfully possess, or be the lawful owner of sufficient permanent water on such range for the proper maintenance of such cattle. This would be a sound and proper regulation of the use of the public lands which could be defended. It is clear, however, that any attempt on the part of the Legislature to grant exclusive right or occupancy upon a part of the public domain would be clearly within the prohibition of the act of Congress of February 25, 1885, and therefore invalid.

It is undoubtedly true that the trial court by its injunction granted upon the application of plaintiffs has assumed that the legislative act of 1889 recognized the priority in right by virtue of the priority in occupancy where both parties, as in this case, had complied with the statute as to possessing permanent water on the range

necessary for the proper maintenance of the cattle sought to be grazed thereupon; and, while this result might be eminently desirable, it cannot be here .defended, and the judgment of the trial court must be; therefore, reversed.

Numerous other decisions might be cited in support of this conclusion, but we do not desire to multiply authorities, and will only refer to the case of Healy v. Smith, 14 Wyo. 263, 83 Pac. 583, 116, Am. St. Rep. 1004, where the question is fully discussed and the right of an exclusive use of the public domain without the initiation of any legal right under claim or color of title under the laws of the United States is fully discussed, the Supreme Court of Wyoming in that case holding against any such right.

[2] There remains but one other question for our consideration, which grows out of the ˙fact that the injunction granted by the judgment of the trial court also sought to restrain the defendants from permitting their cattle and live stock to graze upon private lands of plaintiffs, or to drink the water from the· wells or springs situate on such lands. This question has been considered in numerous opinions by the appellate courts of our Western states, and it is necessary to refer to but a few. Our own territorial Supreme Court passed upon the question several times. In Railway Company v. Cazier, 13 N. M. 131, 79 Pac. 714, the territorial Supreme Court said:

"The strict common-law doctrine as it prevailed in England that every man is compelled to keep his stock within an inclosure or upon his own land was never applicable to this territory, where by long-established custom, animals have been permitted to range at will upon the uninclosed and unoccupied lands of others without liability for trespass."

This might be said to be the general rule as applied in our Western states, not without its exceptions or limitations. The same doctrine was affirmed by the territorial Supreme Court in Sears v. Fewson, 15 N. M. 132, 103 Pac. 268. In the case of Buford v. Houtz, 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618, Mr. Justice Miller considered this question, and pointed out that the principle known to the common law that a man was bound to keep

his cattle and confine them within his own land, and not allow them to trespass upon the grounds of his neighbor, was ill adapted to the nature and condition of the country, referring to the Western country. He points out that nearly all the states had what was called a "fence law," a law by which a kind of fence sufficient in a general way to protect the cultivated grounds from cattle and other domestic animals which were permitted to run at large was prescribed, and that without such fence one cannot, as a general rule, maintain an action for trespass by the cattle of his neighbor running at large. This is the condition, in a few words, as it exists in the Western states, and our jurisdiction, like many others, has enacted certain laws governing the character of fences which must be erected if responsibility for trespasses by cattle wandering at large is to be successfully maintained. The general rule as to the right to permit cattle to wander at large, subject to such limitations as have been developed with respect to it, is perhaps nowhere better stated than in the syllabus to the case of Buford v. Houtz, supra, where it is thus stated:

"During the progress of the settlement of the newer parts of the country the rule that the owner of domestic animals should keep them confined within his own grounds, and should be liable for their trespasses upon uninclosed land of his neighbor, has nowhere prevailed; but, on the contrary, his right to permit them, when not dangerous, to run at large, without responsibility for their getting upon such land of his neighbor, has been universally conceded."

[3] There is one other qualification of the rule which is not ordinarily referred to, but which we find mentioned in some of the authorities, and which undoubtedly courts of equity would notice. It is best stated in the case of Healy v. Smith, supra:

"In proper cases, where the other necessary elements of equity jurisdiction are present, injunction will lie to restrain a live stock owner from wilfully and knowingly driving or turning his stock upon the uninclosed premises of a private owner."

See, also, Light v. United States, 220 U. S. 523, 31 Sup. Ct. 485, 55 L. Ed. 571.

Our conclusion, therefore, is that the rule, taking into consideration all its limitations and as generally applied throughout the Western states, requires the owner to fence out cattle if he desires to claim damages for trespasses by animals when lawfully at large. This being true, there can be no injunction such as was here granted to restrain the defendants from permitting their animals to graze on unenclosed lands of plaintiff, and the use of the water by such animals upon the said unenclosed lands would be governed by the same rule, for which reason the district court was in error in making the injunction permanent in these respects. It is therefore necessary to reverse the judgment of the district court and remand the cause, with instructions to discharge the permanent injunction

ROBERTS, C. J., and PARKER, J., concur.

#### SYLLABUS BY THE COURT.

