**Certiorari Denied, December 5, 2012, No. 33,831**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-015**

**Filing Date: August 29, 2012**

**Docket No. 29,853**

**BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO,**

      **Plaintiff-Appellant,**

**v.**

**IVAN BENAVIDEZ,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Robert M. Schwartz, District Judge**

Jeffrey S. Landers, Bernalillo County Attorney
Eric W. Schuler, Assistant County Attorney
Natalia R. Sanchez, Assistant County Attorney
Albuquerque, NM

for Appellant

Joshua R. Simms, P.C.
Joshua R. Simms
Albuquerque, NM

for Appellee

## OPINION

**BUSTAMANTE, Judge.**

**{1}** At issue in this case is whether counties may enact ordinances which conflict directly with state statutes reflecting the State of New Mexico's free range or "fence-out" approach to livestock management. Holding that they cannot, we affirm the district court's dismissal

of the criminal complaint filed against Defendant Ivan Benavidez by the County of Bernalillo.

**BACKGROUND**

{2}    The County filed a criminal complaint in the Metropolitan Court against Benavidez asserting that he "[d]id allow six cattle to run at large on John Dantis Road, SW and on Metropolitan Detention Center property," contrary to Bernalillo County, N.M., Code of Ordinances ch. 6, art. VI, § 6-53 (2009) of the Bernalillo County Code.  Section 6-53 is part of the Bernalillo County Ordinance generally addressing animals.  Section 6-53(a)—the specific part of the ordinance applicable here—provides that:

> (a)    It is unlawful for a person to allow or permit any animal to run at large in or on any alley, street, sidewalk, vacant lot, public property, other unenclosed place in the county, or private property without the permission of the property owner.

{3}    Benavidez filed a motion to dismiss arguing that Section 6-53(a) conflicted with state law reflecting New Mexico's free range—or "fence-out"—approach to livestock management.  Benavidez asserted that he and his family have been running cattle on the west side of the county "for over 50 years" and that his family had leased land from Westland Corporation which extended over "9 mile hill," including the land surrounding the Metropolitan Detention Center (MDC).  In response, the County argued that it had the authority to enact Section 6-53(a) pursuant to its general police power.  It also argued that the ordinance did not conflict with state law and, if it did, the parts applicable to Benavidez were severable and enforceable.  The Metropolitan Court agreed with Benavidez and dismissed the complaint with prejudice.

{4}    The County appealed to the district court where the parties made essentially the same arguments to the same effect:  that is, the district court also granted Benavidez' motion to dismiss.  In the district court, the County stipulated that the "lands in question in this cause are not within the boundaries of an incorporated or unincorporated municipality, nor are they located in a conservancy district or military base."

**ANALYSIS**

{5}    Given that we are presented with issues of pure law, our standard of review is de novo.  *Smith v. Bernalillo Cnty.*, 2005-NMSC-012, ¶ 18, 137 N.M. 280, 110 P.3d 496.

{6}    The County concedes that New Mexico follows the open range model of livestock management.  The common law of England required animal owners to keep their stock confined and imposed liability on owners for harm caused by animals running at large.  *Sears v. Fewson*, 15 N.M. 132, 135, 103 P. 268, 268 (1909).  New Mexico—along with most of the western states—did not recognize or follow the English rule.  Rather, in New Mexico,

livestock are allowed to run at large without responsibility for their trespass on the unenclosed property of others. *Hill v. Winkler*, 21 N.M. 5, 11-14, 151 P. 1014, 1016-17 (1915). The County itself notes in its briefing that "[t]his rule, which is commonly known as 'fence[-]out,' was codified in a series of statutes enacted over a period of decades." The most direct expression of the Legislature's adoption of the free range approach to livestock management are NMSA 1978, Section 77-16-1 (1909) and NMSA 1978, Section 66-7-363(C) (1978). Section 77-16-1, enacted in 1909, gave statutory voice to the common law "fence-out" rule noted in *Hill*, by requiring land owners to construct a fence meeting statutory standards to protect their property from livestock. Section 77-16-1 provides:

> Every gardener, farmer, planter or other person having lands or crops that would be injured by trespassing animals, shall make a sufficient fence about his land in cultivation, or other lands that may be so injured, the same to correspond with the requirements of the laws of this state prescribing and defining a legal fence.

Thus, absent a proper fence, a landowner living in an area where the running of livestock is lawful had no claim for damages caused by livestock unless the trespass was proven to be willful. 21 N.M. at 13, 151 P. at 1016; *Stewart v. Oberholtzer*, 57 N.M. 253, 256, 258 P.2d 369, 370-71 (1953).

**{7}** Section 66-7-363(C) constitutes a relatively recent affirmation by the Legislature of its commitment to the free range approach to running of livestock. Section 66-7-363(C) provides:

> Owners of livestock ranging in pastures through which unfenced roads or highways pass shall not be liable for damages by reason of injury or damage to persons or property occasioned by collisions of vehicles using said roads and highways and livestock or animals ranging in said pastures unless such owner of livestock is guilty of specific negligence other than allowing his animals to range in said pasture.

This section was enacted in 1966 in apparent direct response to our Supreme Court's decision in *Grubb v. Wolfe*, 75 N.M. 601, 408 P.2d 756 (1965). In *Grubb*—handed down on December 13, 1965—our Supreme Court held that the "early day 'open range' rule which relieved an owner of livestock from any duty to keep his animals off a public highway" would no longer prevail. *Id.* at 605, 408 P.2d at 759. Instead the Supreme Court held that "the owner or keeper of livestock capable of doing harm from this source of danger owes a duty of reasonable care to prevent them from wandering unrestrained on the public way." *Id.* at 607, 408 P.2d at 760 (internal quotation marks and citation omitted). Within three months, the Legislature enacted what is now codified as Section 66-7-363 reinstating the common law rule. 1966 N.M. Laws, ch. 44, § 2.

**{8}** The County admits that enforcement of Section 6-53 requires all owners to fence-in

3

their livestock in all unincorporated areas of the County, which "is not required under state statute." This admission on its face would seem to sound the death knell of Section 6-53(a). But, the County argues, Section 6-53 is not expressly or implicitly preempted by state statute and, in the absence of preemption, the general police power given to it by NMSA 1978, § 4-37-1 (1975) is sufficient to support adoption of Section 6-53(a). We disagree.

Section 4-37-1 provides:

> All counties are granted the same powers that are granted municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties. Included in this grant of powers to the counties are those powers necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants. The board of county commissioners may make and publish any ordinance to discharge these powers not inconsistent with statutory or constitutional limitations placed on counties.

The County asserts that the provision granting counties "the same powers that are granted municipalities" gives it the authority to enact Section 6-53(a) because municipalities are specifically given the power to "prohibit the running at large of any animal within the boundary of the municipality." NMSA 1798, § 3-18-3(A)(2) (1971). We note that the municipal power to prohibit animals running at large is consistent with the state statute prohibiting animals from running "at large within the limits of any city, town or village incorporated or unincorporated." NMSA 1978, Section 77-14-35 (1999) (making it a misdemeanor to allow livestock to run at large within municipal boundaries).

**{9}** The specificity and consistency of Sections 3-18-3(A)(2) and 77-14-35 argue against the County's position because there is no comparable provision preventing livestock from running at large outside of municipalities; that is, in unincorporated areas of the State's counties. Rather, as the County itself accurately catalogs, there are statutes specifically—and narrowly—describing areas in which and methods by which counties are allowed to limit the free range default law. For example, NMSA 1978, Section 77-14-4 (1989) allows boards of county commissioners to "prohibit the running at large of livestock within the limits of any conservancy or irrigation district organized under the laws of the state, and within any portion of a military reservation or enclave . . . situate . . . in such county." The County stipulates that MDC and Dantis Road are not within any conservancy district or military reservation.

**{10}** Similarly, state statutes allow for the creation by counties of "herd law districts." *See* NMSA 1978, §§ 77-12-1 to -12 (1923, as amended through 1999). Section 77-12-2 describes a procedure by which landowners can ask a county to create a herd law district. Once a herd law district is "declared," the fence-out approach to damage by livestock is reversed; that is, a person suffering harm may collect damages even if he does not have a

4

proper fence erected.  Section 77-12-5.  There are no other statutory provisions directly addressing county authority to enact ordinances limiting free running of livestock.

**{11}**     We distill from these provisions no intent by the Legislature to allow counties the general power to disallow the free running of livestock in unincorporated or open areas of their jurisdictions.  The intent and effect of Section 6-53(a) is to do precisely that.  As such, it is directly contrary to—or inconsistent with—state law and thus beyond the County's authority.  *See* § 4-37-1.

**{12}**     The County relies on a case from Idaho in support of its arguments.  *Benewah Cnty. Cattlemen's Ass'n, Inc. v. Bd of Cnty. Comm'rs of Benewah Cnty.*, 668 P.2d 85  (1983).  *Benewah* is distinguishable.  While the Idaho provisions describing county powers are similar to New Mexico's, other provisions are too different from New Mexico's to provide any guidance.  For example, the *Benewah* Court concluded that Idaho's herd law districts could not be created in open range lands and thus precluded the county there from enacting a "fence-in" ordinance which applied to open range within its boundaries.  668 P.2d at 89.  This limitation on the creation of herd law districts simply does not apply in New Mexico.  In addition, we agree with the dissent in *Benewah* that the majority took an improperly narrow view of state law when it ignored the general law of open range in Idaho.  *Id.* at 92-93 (Bistline, J., dissenting).  We agree with the dissent's analysis in *Benewah*.  That analysis, unsurprisingly, tracks ours.

**CONCLUSION**

**{13}**     Concluding that a bit of the Wild West survives in New Mexico, we affirm the district court.

**{14}     IT IS SO ORDERED.**

                                                                         _____

                                                     **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for *Bernalillo Bd. of Co. Comm'rs v. Benavidez*, No. 29,853**

**AGRICULTURE**
Animals and Livestock

**APPEAL AND ERROR**
Standard of Review

**GOVERNMENT**
Counties
Ordinances

**PROPERTY**
Fences and Party Walls

**STATUTES**
Conflicting Statutes