E. Wayne **HAGE** and the Estate of Jean N. Hage, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 91–1470L.

United States Court of Federal Claims.

Nov. 5, 1998.

Lyman Bedford and Michael Van Zandt, McQuaid, Metzler, Bedford & Van Zandt LLP, San Francisco, CA, for plaintiff.

Dorothy R. Burakreis and David F. Shuey, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C. for defendant. Eric C. Olson, Department of Agriculture, and John Payne, Department of the Interior, were of counsel.

Thomas D. Lustig, National Wildlife Federation, and Johanna H. Wald, Natural Resources Defense Council for amici curiae, National Wildlife Federation, Nevada Wildlife Federation, Natural Resources Defense Council, Nevada Department of Wildlife, and Sierra Club. David Creekman, Deputy Attorney General, for amicus curiae Office of the State Engineer of the State of Nevada.

### *PRELIMINARY OPINION*

SMITH, Chief Judge:

Plaintiffs, E. Wayne and the Estate of Jean N. Hage, are the owners of the Pine Creek Ranch in Nye County, Nevada. In 1991, plaintiffs filed this claim alleging constitutional, contractual, and statutory causes of action. In 1996, the court granted in part and denied in part defendant's motion for summary judgment, holding that plaintiffs should have the opportunity to prove whether they "own property rights in the claimed water, ditch rights-of-way and forage and the scope of those rights." *Hage v. United States*, 35 Fed.Cl. 147, 180 (1996).

In June 1997, the court granted plaintiffs leave to amend their complaint to include a claim of ownership in the surface-estate of approximately 752,000 acres of grazing land on federal allotments. On July 6, 1998, the

court stayed defendant's Motion to Dismiss or Alternatively for Partial Summary Judgment until after a limited evidentiary hearing on plaintiffs' property interests.

The court has not had sufficient time to reach a final decision regarding the scope and extent of all the property rights at issue but, to put it metaphorically, has decided which fork in the ditch to follow. Thus, pursuant to the limited evidentiary hearing held in Reno, Nevada, the court issues the following preliminary opinion to streamline and expedite post-trial briefing.[1]

## INTRODUCTION

The two threshold questions in any takings case are: do plaintiffs "possess a property interest and, if so, what is the proper scope of that interest?" *Store Safe Redlands Assoc. v. United States*, 35 Fed.Cl. 726, 734 (1996). The court finds that plaintiffs have met the threshold test of ownership and have a property interest in the vested water rights claimed. Concomitant with this right, plaintiffs have a property interest in the ditch rights-of-way and forage rights appurtenant to their water rights. The court will make a final determination of the exact scope of these rights in its final opinion. The court has not yet reached a decision on plaintiffs' claim for a surface-estate in 752,000 acres of federally managed lands and the stay of defendant's motion continues.

To better guide post-trial briefing, the court makes the following findings of fact:[2]

## Water Rights

As the court stated regarding plaintiffs' Motion in Limine, the Order of Determination of the Office of the State Engineer does not rise to the level of a "final order" for purposes of collateral estoppel. However, given the State Engineer's clear expertise in this area, his highly compelling testimony at trial, and the interests of comity, the court hereby concurs with, and incorporates by reference the findings of ownership contained at pages 130–173 of his report on the Southern Monitor Valley.[3]

The court has not reached a final decision regarding plaintiffs' claimed water rights in the Ralston and Mckinney allotments. The parties should address both the ownership and scope issues for these water rights in their post-trial briefs.

## Ditch Rights–of–Way and Forage

Section 9 of the Act of July 26, 1866, 43 U.S.C. § 661, recognized plaintiffs' vested water rights, but did not dimensionally define the "ditch right of way" which accompanied these rights. Based on the consistent dimensional scope described in subsequent federal legislation, the Act of 1891, 43 U.S.C. § 946,[4] Act of 1895, 43 U.S.C. § 956,[5] and Act of 1901, 43 U.S.C. § 959[6], for similar ditch

1. As the court stressed in its concluding comments at trial, this matter has been on the court's docket for quite some time and it is the court's desire to reach a conclusion on this matter in as timely a manner as possible. To this end, the court again urges the parties to pursue settlement discussions and is available to help such discussions move forward in any way the parties feel would be helpful. In the interim, the parties are again urged to work together in order to stipulate to the administrative elements of trial, such as documentary and exhibit evidence—specifically in preparation of the scheduled November 13, 1998 post-trial evidentiary conference.

2. While the parties are welcome to dispute the findings of fact in this preliminary opinion, they should limit their arguments to the scope of plaintiffs' property interests and the court's finding with respect to the *Order of Determination*.

3. R. Michael Turnipseed, State of Nevada, Office of the State Engineer, *Order of Determination* in the matter of the determination of the relative rights in and to the waters of Monitor Valley—

Southern Part (140–B), Nye County, Nevada (September 15, 1998).

4. "The right of way through the public lands and reservations of the United States is hereby granted ... for the purpose of irrigation ... to the extent of the ground occupied by the water of any reservoir and of any canals and laterals and fifty feet on each side of the marginal limits thereof," Act of March 3, 1891.

5. "The Secretary of the Interior is authorized and empowered, ... to permit the use of the right of way through the public lands of the United States, ... to the extent of the ground occupied by the waters of the canals and reservoirs and fifty feet on each side of the marginal limits thereof," Act of January 21, 1895.

6. "The Secretary of the Interior is authorized and empowered, ... to permit the use of the right of way through the public lands, forest, and other reservations of the United States, ... [for]

rights-of-way, the testimony at trial, and the Forest Service Handbook, 5509.11, ch.62.11 (Aug. 3, 1992), which notes that the determination of whether a right of way under the Act of 1866 exists or not, is "a factual question"; the court finds that plaintiffs have a ditch right-of-way on the ground occupied by the water and fifty feet on each side of the marginal limits of their 1866 ditch.

■ Concurrent with the accompanying easement to perform ditch maintenance via the right-of-way, the court finds that a limited right to forage is appurtenant to and a component of a vested water right. The court notes the undisputed historical use of the ditches and water at issue for stockwatering and livestock maintenance. Persuasive testimony at trial on the nature and intent of the Congressional Acts dealing with western land management bore out the conclusion that the United States intended to respect and protect the historic and customary usage of the range. To that end, the court finds as a matter of common sense, that implicit in a vested water right based on putting water to beneficial use for livestock purposes was the appurtenant right for those livestock to graze alongside the water.

■ The court holds that the extent of the right to forage around an Act of 1866 ditch is contiguous with the scope of the ditch right-of-way: the ground occupied by the water and fifty feet on each side of the marginal limits of the ditch.

### Surface Estate Claim

The court has not reached a decision on defendant's stayed Motion to Dismiss or Alternatively for Partial Summary Judgment with regard to plaintiffs' claim of a property interest in the surface estate of 752,000 acres formerly permitted to plaintiffs. The court has the parties' earlier briefs, but invites the parties to re-address the issue in light of the testimony at trial and the court's preliminary findings.

### The Takings Phase

As the court noted at the close of trial, whether or not a taking has occurred is a

the supplying of water for domestic, public, or any other beneficial uses ... not to exceed fifty

mixed question of law and fact. Since the court heard many of the factual issues relevant to the legal question of what constitutes a taking of property within the Fifth Amendment's strictures, the court invites plaintiffs to file a Motion for Summary Judgment on this issue and invites the government to file either an opposition or an opposition and cross-motion. It would be efficient for both sides to file these motions along with their post-trial briefs on the scope issues. The court will resolve any scheduling disputes at the hearing on November 13, 1998.

The court has given considerable thought to the appropriate legal threshold in an alleged taking of vested water rights and believes the legal question before the court is twofold. Either plaintiffs' access to and use of their vested water rights is totally dependent upon the issuance of a federal grazing permit, in which case there has not been a taking; or plaintiffs' right to use and access the water is a true vested right, not a mere illusory one, and therefore not totally dependent on the issuance of a federal grazing permit. If the latter is the case and the United States denies plaintiffs access to and use of their water, then a taking has occurred.

As the court held in *Hage I*, federal courts "have considered the permit system to be an administrative method employed by the government to allow the parties the exclusive right to graze based on historic grazing practices. All the courts which have considered this issue have held or assumed such agreements to be licenses which confer certain privileges to the permittee, revocable at the government's discretion." 35 Fed.Cl. at 167 (citations omitted).

The court is not questioning the government's authority to issue grazing permits or control access to federal lands. The question before the court, and the one the parties should address is: what are the Fifth Amendment consequences of the government's exercise of their permit authority with regard to vested water rights?

feet on each side of the marginal limits thereof," Act of February 15, 1901.

Underlying the dilemma is, what is the meaning of a "vested water right" if the government can deny plaintiffs access and use by merely denying them a grazing permit? Does not the very concept of vested rights embody a recognition of supremacy over all later claimants, and isn't this the protection explicitly recognized by the Act of July 26, 1866?

While the court recognizes that it has not yet defined the exact scope of plaintiffs' property ownership, the legal questions of whether such property interests can be, and were in fact, taken in this context, are not dependent on the size or scope of such rights. The court thus directs the parties to address the legal question of whether or not a taking of plaintiffs' vested water rights, ditch rights-of-way, forage rights, and surface estate has occurred in their briefing as outlined above.

### Briefing Schedule

Due to the court's exceptionally tight schedule in the coming months, the following briefing schedule is established. It will only be altered under exceptional circumstances. Plaintiffs' brief will be due January 15, 1999 and shall address: first, the scope and extent of plaintiffs' property interests as outlined in this preliminary opinion; and second, whether or not a taking of plaintiffs' property rights has occurred. Defendant shall respond by February 28, 1999.[7] Plaintiffs' reply is due March 15, 1999, and defendant's sur-reply is due March 30, 1999. The court will hear closing arguments on both the property rights issues and takings on April 22, 1999.

IT IS SO ORDERED.

---

7. Each side's briefs shall be limited to 75 pages, with reply briefs limited to 30 pages.