F I L E D
United States Court of Appeals
Tenth Circuit

FEB 23 1999

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

DIAMOND BAR CATTLE
COMPANY, a New Mexico
partnership; LANEY CATTLE
COMPANY, a New Mexico
partnership,

    Plaintiffs-Counter-Defendants-
Appellants,

    v.

UNITED STATES OF AMERICA;
DAN GLICKMAN, Secretary of the
United States Department of
Agriculture; JACK WARD THOMAS,
Chief of the U.S.D.A. Forest Service,

    Defendants-Counter-Claimants-
Appellees.

_____

NATIONAL WILDLIFE
FEDERATION, GILA WATCH, NEW
MEXICO WILDLIFE FEDERATION;
RIO GRANDE CHAPTER OF TROUT
UNLIMITED; WILDERNESS
WATCH,

    Intervenors.

No. 97-2140

Larry G. Patton, Luna, New Mexico (R. Lar Thomas, Albuquerque, New Mexico, with him on the brief), for the appellants.

Elizabeth Anne Peterson, Department of Justice (Lois J. Schiffer, Assistant Attorney General; John J. Kelly, United States Attorney; John W. Zavitz, Assistant United States Attorney; Robert L. Klarquist and Margo D. Miller, Department of Justice, with her on the brief), for the appellees.

Before **TACHA, BALDOCK,** and **BRISCOE**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Plaintiffs Diamond Bar Cattle Company and Laney Cattle Company appeal the district court's entry of summary judgment in favor of the United States. On appeal, plaintiffs contend the district court erred in finding plaintiffs had no private property right to graze their cattle on federal lands without a Forest Service permit, and in finding plaintiffs liable for trespass based on use of federal lands for cattle grazing without a permit. We affirm.

Kit and Sherry Laney are the owners and operators of Diamond Bar Cattle Company and Laney Cattle Company. The Laneys and their predecessors in title have used the lands at issue for cattle grazing since 1883. The companies historically have grazed their cattle on government lands by obtaining grazing

-2-

permits. The first such permit was issued to plaintiffs' predecessors in title in 1907. More recently, the Forest Service issued a ten-year term grazing permit in 1985 allowing Laney Cattle Company to graze cattle on the 27,926-acre "Laney allotment" within the Apache National Forest. The Forest Service issued a similar permit in 1986 to Diamond Bar Cattle Company for grazing on the 146,470-acre "Diamond Bar allotment" within the Gila National Forest. Although the Forest Service notified the companies several times of upcoming expirations of the permits, neither company renewed its permit and the permits expired by their terms in 1995 and 1996. Each company offered to pay the requested grazing fees and negotiate a permit that recognized the companies' "valid existing rights." [1]

Plaintiffs allege they are the owners of a vested water right that was obtained through prior appropriation before 1899, when the United States withdrew from the public domain the land that became the Gila National Forest and Apache National Forest. Plaintiffs claim this water right includes an

_____

[1] Plaintiffs state that had they signed the 1996 permit they "would [have] relinquish[ed] the private property rights they were convinced they owned over to complete government control." Plaintiffs' Br. at 32. Yet the language in the 1996 permit to which plaintiffs objected was present in the permit obtained by the Laneys on behalf of plaintiffs in 1985. See id. at 6 (stating in 1996, a Forest Service Employee "came to the Laneys' home . . . and hand delivered a letter requesting that the Laneys sign a new Term Grazing Permit, which would have the same terms and conditions as the 1986 permit").

inseparable right to graze the lands that comprise their allotments. Plaintiffs do not claim title or other real property interest in the land itself; rather, they assert a private "possessory" property right that entitles them to use of the water and range for the purpose of raising livestock. Plaintiffs contend their long-standing private property right was acquired under New Mexico law, obviating the need for plaintiffs to obtain grazing permits after the land was withdrawn from the public domain. The Forest Service denied any such private property rights existed and advised plaintiffs that refusal to complete permit applications would result in accumulation of unauthorized use fees, removal of plaintiffs' cattle from government property, and initiation of a civil trespass action against plaintiffs.

Plaintiffs initiated this action on April 1, 1996, seeking a declaration that plaintiffs are the valid lawful owners of (1) "sufficient permanent living water for the proper maintenance of the cattle owned by Diamond Bar and Laney," and (2) "valid vested existing rights in the range for cattle raising purposes on the lands upon which Diamond Bar and Laney are located." [2] Appellants' App., Doc. 1 at 4. Plaintiffs also asked the court to declare the Department of Agriculture and the Forest Service had "no jurisdiction over the rights to the water and in the range now held by Diamond Bar and Laney," and to permanently enjoin the Forest

---

[2] Plaintiffs concede their asserted rights are exclusively for raising livestock, and that ownership of such rights does not impact the rights or privileges of any other user of the national forest system lands.

Service from "interfering with the valid existing rights to water and in the range for cattle raising purposes."  Id. at 14.  The United States counterclaimed to recover damages from plaintiffs for trespass and unauthorized grazing use and to enjoin plaintiffs "from unauthorized and unlawful use of property owned by the United States for livestock grazing purposes."  Id., Doc. 2 at 10.

In entering summary judgment for the United States, the district court held plaintiffs obtained no legal right of possession or use merely because their predecessors historically grazed cattle on the land.  Nor did the court find it material that plaintiffs' water rights may have long been vested under New Mexico law, stating:  "[W]hether Plaintiffs own certain water rights . . . does not change the fact that such rights do not deprive the Forest Service of its statutory authority and responsibility to regulate the use and occupancy of National Forest System lands for livestock grazing through the issuance of grazing permits."  Id., Doc. 9 at 15.  The court enjoined plaintiffs from grazing livestock in the Gila and Apache National Forests until they obtained authorization from the Forest Service. [3]

---

[3]  The district court erred in characterizing plaintiffs' complaint as one seeking to quiet title in land owned by the United States.  The Quiet Title Act, 28 U.S.C. § 2409a, waives the United States' sovereign immunity in civil actions adjudicating title to real property in which the United States claims an interest, "other than a security interest or water rights."  As noted, plaintiffs do not seek title to the real property that comprises the Diamond Bar and Laney allotments.

**Standard of Review**

We review a grant of summary judgment de novo, applying the same legal standard used by the district court. Sundance Assocs., Inc. v. Reno, 139 F.3d 804, 807 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Sundance, 139 F.3d at 807.

**Federal Regulation of United States Lands**

Article IV of the United States Constitution provides: "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." The Supreme Court has characterized Congress' power under the Property Clause to regulate the public lands as "without limitations." United States v. City and County of San Francisco, 310 U.S. 16, 29 (1940). Pursuant to this expansive grant of authority, Congress passed the Organic Administration Act of 1897, which authorized reservation of lands as national forests and directed the Secretary of Agriculture

to issue rules and regulations concerning such forests.  See 16 U.S.C. § 551. [4]

Since then, Congress has passed numerous additional statutes directing that grazing in national forests be by permit only.  See, e.g., 16 U.S.C. § 580 l ("The Secretary of Agriculture in regulating grazing on the national forests . . . is authorized, upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof."); 43 U.S.C. § 315b; 43 U.S.C. § 1752.

As early as 1906, the Secretary of Agriculture promulgated a regulation requiring that any person seeking to graze stock on national forest land first obtain a permit from the Forest Service.  See United States v. Grimaud, 220 U.S. 506, 509 (1911).  In upholding the Secretary's authority to issue this regulation, the Supreme Court iterated that an "implied license" to graze on public lands existed "so long as the government did not cancel its tacit consent."  Light v. United States, 220 U.S. 523, 535 (1911).  The fact that historically the government may not have objected to use of public lands for grazing was never intended to "confer any vested right on the complainant, nor did it deprive the United States of the power of recalling any implied license under which the land had been used for private purposes."  Id.

---

[4] This section was repealed in part in 1976 when Congress passed the Federal Land Policy and Management Act.  See Pub. L. 94-579, Title VII, § 706(a), 90 Stat. 2793.

The "implied license" theory discussed in Light was articulated by the Supreme Court as early as 1890, see Buford v. Houtz, 133 U.S. 320, 326 (1890), and has since been cited dominantly in cases reaffirming that use of public lands for grazing is not a right but a privilege. See, e.g., Osborne v. United States, 145 F.2d 892, 896 (9th Cir. 1944) ("It is safe to say that it has always been the intention and policy of the government to regard the use of its public lands for stock grazing, either under the original tacit consent or, as to national forests, under regulation through the permit system, as a privilege which is withdrawable at any time for any use by the sovereign without the payment of compensation."); Healy v. Smith, 83 P. 583, 587 (Wyo. 1906). In Omaechevarria v. Idaho, 246 U.S. 343, 352 (1918), the Court stated unambiguously, "Congress has not conferred upon citizens the right to graze stock upon the public lands. The government has merely suffered the lands to be so used." This principle categorically refutes plaintiffs' assertions that their predecessors obtained a vested water right that included a right to graze public lands. Any grazing of cattle on public lands by plaintiffs' predecessors was permitted by an implied license, which is merely a "personal privilege to do some particular act or series of acts on land without possessing any estate or interest therein, and is ordinarily revocable at the will of the licensor." Black's Law Dictionary 919-20 (6th ed. 1990).

Current regulations provide that "all grazing and livestock use on National Forest System lands . . . must be authorized by a grazing or livestock use permit." 36 C.F.R. § 222.3. Permits are issued for terms of ten years or less and are issued only after submission and approval by the Forest Service of an appropriate application. See id. § 222.3(c)(1). A term permit holder has first priority for a new permit at the end of the term period, provided the holder has fully complied with the terms and conditions of the expiring permit. See id. Use of forest service lands for grazing purposes without a permit subjects the offender to unauthorized grazing use fees. See id. § 222.50(h). Grazing permits "convey no right, title, or interest held by the United States in any lands or resources." Id. § 222.3(b).

Plaintiffs concede the existence of the above law, but contend it does not apply to the specific situation presented here, namely the extent to which a permit is required when the rights were "appropriated" pursuant to state law before the federal government removed the land at issue from the public domain. However, plaintiffs misconstrue the law upon which they base their "vested private property rights."

## New Mexico Law

In New Mexico, water rights are obtained and governed by the doctrine of prior appropriation. See N.M. Const. Art. XVI, § 2 ("Priority of appropriation

shall give the better right."). Plaintiffs claim their predecessors in title obtained a valid, vested water right through appropriation. This vested water right allegedly entitled plaintiffs' predecessors, and now entitles them, to an inseparable but distinct right to use for grazing, without a permit, the rangeland known as the Diamond Bar and Laney allotments. [5] See Plaintiffs' Br. at 17 ("Diamond Bar and Laney are the owners of the water right and the scope of that right includes possession of the range for the purpose of raising livestock.").

Plaintiffs premise their alleged rights upon N.M. Stat. Ann. § 19-3-13:

> Any person, company or corporation that may appropriate and stock a range upon the public domain of the United States, or otherwise, with cattle shall be deemed to be in possession thereof: provided, that such person, company or corporation shall lawfully possess or occupy, or be the lawful owner or possessor of sufficient living, permanent water upon such range for the proper maintenance of such cattle.

This section has been in effect since its passage in 1889 by the Territorial Legislature of New Mexico. Plaintiffs read this section as bestowing a private

---

[5] In their complaint, plaintiffs sought, *inter alia*, a declaration that they owned water rights under New Mexico law and that they owned a possessory right to graze the federal land surrounding the water rights. The district court held plaintiffs did not own grazing rights on land belonging to the United States, but never reached the issue of whether plaintiffs own water rights under New Mexico law. Yet, the district court dismissed the entire complaint with prejudice. Although the judgment shows the district court dismissed plaintiffs' water rights claim with prejudice, we do not view the court's action as affecting any water rights plaintiffs may own under New Mexico law. Thus, we do not reach the issue and for purposes of this appeal, we assume without deciding that plaintiffs hold valid water rights under New Mexico law.

property right to graze cattle on the public domain upon all those with a valid water right. Plaintiffs' interpretation is negated by longstanding New Mexico law.

As early as 1915, the New Mexico Supreme Court rejected the proposition that what is now § 19-3-13 created, or was intended to create, a property right in land in the public domain superior or equal to the federal government's right in such land. In Hill v. Winkler, 151 P. 1014 (N.M. 1915), two private parties had conflicting claims to grazing land in the public domain. The court was asked to decide which party "had a first and prior right to graze the said tract of government land by reason of prior occupancy thereof, and by reason of the further fact that they had acquired and developed permanent waters in connection therewith for the proper maintenance of such cattle." Id. at 1015. The court conceded: "There is a serious question concerning the right of the Legislature to make provision such as is argued was here made." Id. The basis for the court's reservation was an 1885 federal statute prohibiting the "assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any state or any of the territories of the United States, without claim, color of title." Id. In addressing the scope of the New Mexico law in light of the 1885 federal statute, the court stated "it seem[ed] clear . . . that the attempted granting of an exclusive right in the use of the public domain . . . would clearly violate the

-11-

congressional act, and must therefore be held invalid, if that was the intention of the Legislature." Id. The court avoided this conflict by limiting the reach of the New Mexico statute:

> We are of the opinion, however, that the [New Mexico laws at issue] can be construed as not intending to grant any exclusive right in the use of the public domain, but, on the contrary, as attempting to provide that all those who seek to stock a range upon the public domain must, before doing so, lawfully possess, or be the lawful owner of, sufficient permanent water on such range for the proper maintenance of such cattle. This would be a sound and proper regulation of the use of the public lands which would be defended. It is clear, however, that any attempt on the part of the Legislature to grant exclusive right or occupancy upon a part of a public domain would be clearly . . . invalid.

Id. at 1015-16. Thus, contrary to plaintiffs' argument, § 19-3-13 has not been interpreted to bestow a private property right to graze upon the public domain if one has a concomitant right to the water upon the proposed grazing range. As Hill makes plain, § 19-3-13 purports only to limit access to the public domain for grazing purposes to those individuals who have first obtained a valid water right sufficient to maintain the cattle to be grazed.

The New Mexico Supreme Court further explained the reach of § 19-3-13 in Yates v. White, 235 P. 437 (N.M. 1925). The court characterized a defendant's rights as follows: "The defendant, then, owning all of the waters on his range, had the right to the exclusive enjoyment of the license to graze these lands as against all others who did not develop other waters upon the same." Id. at 437. Yates

-12-

thus reinforced the holding in Hill that § 19-3-13 serves only to limit private use of the public domain by restricting grazing access to those who have a water right along the range. More significant, however, is the court's express concession that access to the public domain, even if regulated pursuant to § 19-3-13 and other New Mexico laws, is not a right, but a privilege governed by license.

Plaintiffs direct our attention to First State Bank of Alamogordo v. McNew, 269 P. 56 (N.M. 1928), where the New Mexico Supreme Court stated that McNew,

> having appropriated and stocked said range with cattle, and being the owner of permanent water for use upon said range for the maintenance of cattle thereon, had possessory rights in the said public lands, which he could protect as against one forcibly entering thereon without right. Equity would protect him in such possession by enjoining another stock-owner not owning or possessing water from willfully turning his cattle upon such range.

Id. at 59 (internal citations omitted). We do not read McNew as contravening Hill or Yates, but as restating that under § 19-3-13 McNew had a right to exclude from public lands anyone seeking to graze cattle upon those lands who did not have a vested water right. In any event, whatever McNew's rights may have been, they were superior only to those who were seeking to make use of public land "without right." As implicitly acknowledged in Hill and Yates, the government's right to possess, control, and exclude others from public lands is plenary and may not be negated by contrary state law. At best, McNew had a right to possession

-13-

sufficient to allow him to exclude certain private parties. His own occupation of public lands for grazing was a privilege subject to withdrawal by the government.

Plaintiffs' claim of a private property right superior to that of the United States also ignores N.M. Stat. Ann. § 19-3-1, which delineates a recording and notice procedure for those who take "possession of any lands being a part of the public domain of the United States." The statute was passed in 1878 and specifically limits the right of possession: "And the person so making and recording the same shall have the right to the possession of said lands described therein, as against every other person *except the United States, and those holding or deriving title from the United States*." N.M. Stat. Ann. § 19-3-1 (emphasis added). Hence, while § 19-3-1 and § 19-3-13 purport to grant "possessory" interests in public domain lands that may be enforceable against non-federal claimants, no New Mexico statute grants (nor could it grant) a property interest in federal lands that may be enforced against the United States.

### Federal Law

The United States has long recognized the validity of private water rights obtained pursuant to state water law. See Andrus v. Charlestone Stone Products Co., Inc., 436 U.S. 604, 614 (1978) (noting in 1866, 1870, and 1872, Congress affirmed the "view that private water rights on federal lands were to be governed by state and local law and custom"). This recognition was made explicit in the

Mining Law of 1866, which provides in relevant part:

> Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed.

43 U.S.C. § 661. Plaintiffs argue § 661 constitutes governmental recognition not just of their water right, but also of their "inseparable" range right, which they contend is within the scope of their water right and was likewise obtained by "priority of possession." In plaintiffs' words,

> The doctrine of prior appropriation is a doctrine which extends far beyond water. It can apply to any natural resource which can be reduced to the control of man by his own labor . . . .
> The doctrine applies to the water which the cattle consume and to the range upon which they forage.

Plaintiffs' Reply Br. at 9.

Plaintiffs' interpretation of the Mining Act is contrary not only to the language of the Act itself, which simply recognizes rights to the use of water, but also to the well-settled body of law holding no private property right exists to graze public rangelands. The Act cannot fairly be read to recognize private property rights in federal lands, regardless of whether proffered as a distinct right or as an inseparable component of a water right. See, e.g., United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 704 (1899) ("The effect of this

-15-

statute was to recognize, so far as the United States are concerned, the validity of the local customs, laws, and decisions of courts in respect to the appropriation of *water* ." (emphasis added)); Cleary v. Skiffich , 65 P. 59, 62-63 (Colo. 1901) (holding under Mining Act, owner of vested water right for purposes of mill operation had right to use of water and ditch to divert water to place of beneficial use, but did not have right to land on which mill was situated).

Virtually every attempt like plaintiffs' to expand the reach of the Mining Act to include federal recognition of private property rights in federal land has been soundly rejected. In Hunter v. United States , 388 F.2d 148, 151 (9th Cir. 1967), the court rejected plaintiff's claim that the Mining Act of 1866 required recognition of water and grazing rights that had been "appropriated" by plaintiff's predecessors and thus were vested in him. A district court recently cited Hunter in rejecting a claim that ranchers' predecessors "as a matter of prior appropriation" had acquired "common law rights to use [federal] land for grazing purposes and to some amount of water" because those predecessors had "occupied and used the land for ranching purposes" since 1872. Gardner v. Stager , 892 F. Supp. 1301, 1302 (D. Nev. 1995), *aff'd* 103 F.3d 886 (9th Cir. 1996). The court described the claim as flying "in the face of a century of Supreme Court precedent," id. at 1303, and explained:

> [T]he fact that [plaintiffs'] predecessors grazed stock on the land at
> issue in the 1870's does not mean that the [plaintiffs] today have a

vested grazing right . . . immune from federal pasturage. On the contrary: use of public lands for stock grazing, either under the original regime of "tacit consent" or under the permit system after establishment of the national forests, was and is a privilege with respect to the federal government, revocable at any time.

Id. at 1303-04 (adding "plaintiffs' pleadings in this case . . . border on the frivolous and sanctionable" and "reflect a lack of research into the most basic legal concepts and principles applicable to this case, and . . . are directly contradicted by an unbroken line of Supreme Court precedent").

Only one court has intimated that an interest in federal land, other than a ditch right-of-way or an easement for diversion of water from federal to private land, is obtainable under the Mining Act of 1866. In Hage v. United States, 35 Cl. Ct. 147 (1996), Nevada ranch owners brought suit alleging the government, by canceling plaintiffs' grazing permit and thereby denying them access to water to which plaintiffs had a vested right, had taken without just compensation plaintiffs' property interests in water rights, ditch rights-of-way, and rangeland forage. Plaintiffs claimed an interest in public land and water which their predecessors had used for cattle grazing since the 1800's. In 1907, Congress had designated the land as national forest. As relevant here, plaintiffs' complaint was twofold. First, plaintiffs claimed they had a "property interest in the permit because the federal government issued the permit in recognition of rights which existed prior to the creation" of the national forest. Id. at 168. This interest

-17-

purportedly was recognized by the Mining Act of 1866: "Plaintiffs claim that the Act of 1866 merely enacted as federal law the custom and usage of the Western states and territories to recognize the rights of the first appropriator to acquire a priority right to the use and enjoyment of the public land over those who had not expended such labor."   Id. at 170.  Second, plaintiffs alleged that under Nevada law, their water right included the right ("inherently part of the vested stockwater right") to "bring cattle to the water, and for cattle to consume forage adjacent to a private water right."   Id. at 175.

The court rejected plaintiffs' argument that the Mining Act recognized distinct property interests in public lands.    See id. at 170 ("The Act does not address property rights in the public lands and the court declines to create such rights contrary to the clear legislative intention of Congress.").  However, despite conceding grazing was a revocable privilege and plaintiffs had no property interest in the rangeland, the court denied the government's motion for summary judgment with respect to plaintiffs' claim that the water right included the right to adjacent forage.

> If Nevada law recognized the right to graze cattle near bordering water as part of a vested water right before 1907, when Congress created the Toiyabe National Forest, plaintiffs may have a right to the forage adjacent to the alleged water rights on the rangeland.
> . . . .
> When the federal government created the Toiyabe National Forest, it could not unilaterally ignore private property rights on the public domain.  If Congress wanted to remove all private property

interests in the public domain, which were created by the state under state law, the Constitution would have required the federal government to pay just compensation. Just as the federal government could not take private property rights in water or ditch rights-of-way when it created the Toiyabe National Forest, the government could not take any other form of private property right in the public domain. Plaintiffs will have the opportunity at trial to prove property rights in the forage stemming from the property right to make beneficial use of water in the public domain within Nevada originating prior to 1907.

Id. at 175-76. In a subsequent order, the court explicitly recognized plaintiffs had a property interest in their ditch rights-of-way and forage rights appurtenant to their water right. See Hage v. United States, 1998 WL 775484 *2 (Cl. Ct. Nov. 5, 1998) ("[I]mplicit in a vested water right based on putting water to beneficial use for livestock purposes was the appurtenant right for those livestock to graze alongside the water."). The court held this forage right encompassed the "ground occupied by the water and fifty feet on each side of the marginal limits of the ditch." Id. See Store Safe Redlands Assoc. v. United States, 35 Cl. Ct. 726 (1996).

The circumstances here are appreciably different than in Hage. First, it is not the law in New Mexico that a water right includes the right to graze public lands. As noted, the New Mexico Supreme Court has specifically disavowed such an interpretation of N.M. Stat. Ann. § 19-3-13. See Hill, 151 P. at 1015. It is irrelevant to the present case that Nevada law may attach a forage right to a water right. Second, the property interest not explicitly recognized by the Mining Act

but asserted by plaintiffs and recognized as potentially compensable in Hage was a narrow right to forage along the waterfront. Here, plaintiffs do not assert a right to forage only along the waterfront or a right to lead their cattle to water solely to drink, but a right to occupy and possess, without federal authorization, 174,396 acres of federal land for cattle grazing purposes.

Further, Hage was a takings case in which plaintiffs claimed they were entitled to compensation from the government for its taking of "compensable property interests" in water, ditch rights-of-way, and forage rights. "The Fifth Amendment does not prohibit the government from taking its citizens' property; it merely prohibits the government from taking property without paying just compensation." Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir. 1991). Plaintiffs here do not bring a claim under the Fifth Amendment, but rather seek declaratory and injunctive relief requiring the United States to issue a grazing permit that explicitly recognizes the permit holders' vested "possessory" property interest in federal lands. This significant difference is itself dispositive. Even if we were to assume the truthfulness of all facts alleged by plaintiffs and the validity of every legal theory asserted by plaintiffs, they would not be entitled to the relief they seek. Plaintiffs do not seek mere compensation here, but in essence assert property owners have a right to require that the federal government *recognize* plaintiffs' property interest instead of taking that interest and paying

-20-

just compensation.

At best, plaintiffs possess a valid water right that is protected by the Mining Act. However, the United States has not acted to take plaintiffs' water rights, has not denied access to the water, and has not sought to divert plaintiffs' use to a governmental purpose. In fact, the United States concedes if plaintiffs do hold a valid water right, the government may not usurp that right. Plaintiffs contend their water right is of little utility if their cattle have no place to graze. If true, the fault lies with plaintiffs, who were fully apprized of the consequences of failing to renew their permits. See Hage, 35 Cl. Ct. at 171 ("The court also understands that without a grazing permit, the ranch may become worthless. But the court emphasizes that plaintiffs' investment-backed expectations and reliance on the privilege to graze do not, in themselves, create a property interest in the rangeland or the permit.").

**Conclusion**

Plaintiffs do not now hold and have never held a vested private property right to graze cattle on federal public lands. At the time plaintiffs' predecessors began ranching, grazing on the public domain was a privilege tacitly permitted by the government by an implied license. This license was revocable at the government's pleasure and conferred no right in plaintiffs or their predecessors to

-21-

graze a specific allotment of land.

It is not disputed that the Diamond Bar and Laney allotments are located on national forest lands, where grazing is by permit only. Nor is it contested that plaintiffs grazed cattle on these allotments without a permit. Therefore, the district court acted properly in enjoining plaintiffs from further unauthorized grazing, in assessing unauthorized use fees, in directing removal of plaintiffs' cattle, and in finding plaintiffs in trespass of federal lands.

AFFIRMED.