**Michael O. BISCHOFF, Loretta Bischoff, and Bischoff Enterprises, a Wyoming Partnership, Petitioners,**

**v.**

**Dan GLICKMAN, Secretary of Agriculture, Michael Combeck, Chief Forester, U.S. Forest Service, Elizabeth Estill, Rocky Mountain Regional Forester, U.S. Forest Service, Abigail Kimbell, Forest Supervisor, Bighorn National Forest, Dave Myers, District Ranger, Bighorn National Forest, U.S. Forest Service, Respondents.**

No. 97–CV–253B.

United States District Court,
D. Wyoming.

April 13, 1999.

Daniel B. Frank, Cheyenne, WY, Joseph
E. Darrah, Powell, WY, for plaintiff.

Stephanie Parent, U.S. Department of
Justice, Washington, D.C., L. Robert Murray, Assistant U.S. Attorney, Cheyenne,
WY, for defendant.

### ORDER GRANTING RESPONDENTS' MOTION TO DISMISS

BRIMMER, District Judge.

This matter comes before the Court on
Respondents' motion to dismiss. After
hearing oral arguments, reading the briefs,
and being advised of the premises, the
Court FINDS and ORDERS as follows:

### I.  BACKGROUND[1]

This case revolves around a land deal
"gone wrong." For ranchowners Michael
and Loretta Bischoff ("Petitioners"), the
unfortunate result of this bad land deal
was the loss of two federal grazing permits. Without these permits, the Bischoffs lost the "connectivity" of their ranch
and could no longer run cattle through
their entire property. The details of the
failed transactions at the heart of this case
are as follows:

Prior to the events that ultimately resulted in the loss of Petitioners' grazing
permits, Petitioners owned an 18,000 acre

---

1. An exhaustive review of the facts is not necessary for the disposition of this case—for this is, after all, a motion to dismiss when the Complaint is accepted as true. However, a review will help the reader better understand the story behind the case.

ranch near Lovell, Wyoming. An additional 140,000 or more acres was attached to the Petitioners' privately held land through a variety of grazing permits and leases. The Forest Service grazing permits for the Devil's Canyon and Little Mountain areas, the subject of the dispute in this case, made up 30,000 to 40,000 of the additional acreage. In all, Petitioners had access to 160,000 acres of private, state, and federal lands for grazing their cattle and horses.

Petitioners' problems began in January 1996 when they entered into a Buy–Sell/Option agreement with Pro–Formance Concepts, LLC ("PFC"). According to that agreement, PFC had the option to purchase Petitioners' privately held, 18,000 acre ranch by December 31, 1996. Petitioners also entered into a lease agreement with PFC, to allow PFC to begin immediately running cattle on the ranch. The Forest Service met with Petitioner Loretta Bischoff and PFC member Chantz Prewitt on February 5, 1996 to discuss whether Prewitt could graze PFC cattle on the Devil's Canyon and Little Mountain allotments ("Forest Service Allotments"). (Admin.R. Vol. 2 at 317.) During conversations that followed, the Forest Service explained that although PFC's lease was sufficient to obtain the BLM grazing permits, the lease was insufficient to obtain the Forest Service grazing permits. The Forest Service requires the permit-holder to own both the base property and the livestock grazed. (Admin.R. Vol. 1 at 66.)

Consequently, PFC exercised a portion of its option to purchase Petitioners' base properties. Petitioners transferred the base properties to PFC via warranty deeds on May 20, 1996. (Admin.R. Vol. 1 at 71–81.) These warranty deeds were subject to the Petitioners' mortgage to Equitable Agri–Business, Inc. ("Equitable").

In July 1996, the Forest Service issued the Petitioners' grazing permits to PFC. PFC grazed its livestock under the permits during the summer of 1996. In the fall of 1996, however, PFC defaulted on its buy-sell/option and lease agreement by failing to make the required payments. In November 1996, Petitioners filed suit against PFC in state district court. PFC reconveyed the base properties to the Petitioners via quitclaim deeds on January 16, 1997. (Admin.R. Vol. 2 at 444, 447.)

On March 24, 1997, Petitioners met with the Forest Service regarding management of the Forest Service allotment for the upcoming grazing season. At that meeting, the Petitioners provided the Forest Service with a Statement of Insolvency from PFC. The Forest Service informed Petitioners that the base properties' mortgagee, Equitable, would need to assign to the Petitioners its priority to receive the grazing permits. The Petitioners would need to go through the same permit waiver process with Equitable as they had with PFC in 1996.

On April 14, 1997, Forest Service employee David Beard contacted Equitable to discuss the Petitioners' request to have Equitable waive its escrow right to the permits to allow the permits to transfer back to Petitioners. (Admin.R. Vol. 2 at 320.) Equitable asked Beard if it was possible to reissue the permits to Petitioners; Beard told Equitable that he was unsure if Petitioners could regain their permits because Petitioners had previously waived their right to the permits and Equitable was not initiating a foreclosure action on the loan. At that time, Beard had not spoken to Petitioners about this uncertainty.

On April 24, 1997, the District Ranger sent a letter to Petitioner Michael Bischoff. The Ranger informed Bischoff that because Equitable was not initiating a foreclosure action on the loan, Equitable could not exercise its priority to the grazing permit and waive it in favor of Petitioners. In addition, the District Ranger called attention to a waiver provision stating that a permit may be subject to cancellation if base property revests in the previous owner within a two-year period, as it

had in Petitioner's case. The District Ranger pointed out that PFC could not waive its permit to Petitioners because it had already transferred the base property back to Petitioners and no longer owned any permitted livestock. Petitioners contend that the Forest Service had never raised these issues with Petitioners prior to this letter. Also on April 24, the District Ranger issued a "show cause" letter to PFC questioning whether PFC had ever run a legitimate livestock business since it no longer owned the base property attached to the permits. (Admin.R. Vol. 1 at 139.)

On May 19, 1997, Petitioners again explained to the Forest Service the transactions between Petitioners and PFC and asked that the permits be reissued. The Forest Service subsequently met separately with Petitioners and PFC on several occasions. On June 26, 1997, Michael Bischoff and PFC member Robert Dunbar submitted waivers to the Forest Service to waive the permits from PFC to the Petitioners. Petitioners also submitted grazing permit applications at that time. By letter of July 2, 1997, the District Ranger informed Petitioners that the permit waivers were invalid because Robert Dunbar was not a PFC member authorized to sign documents relating to the permit. Because the waiver was invalid, the Forest Service could not consider the Petitioners' applications. Later in July, PFC member Gary Jackson submitted a waiver form.

On July 31, 1997, the Forest Service issued a decision letter in which the District Ranger canceled the grazing permits. The Forest Service reasoned that (1) PFC never owned the base property, (2) PFC did not own the livestock grazed, and (3) PFC did not apply to graze the allotment or apply for non-use during 1997. Petitioners attempted several times to appeal the decision. The Forest Service dismissed Petitioners' appeals. The Petitioners then filed suit in this Court, alleging that Defendants (1) violated the Administrative Procedure Act (Counts I and II),

(2) violated Petitioners' right to due process (Count III), and (3) are estopped from denying Petitioners' permit applications (Count IV). Petitioners ask for a review of the agency's action with a request for declaratory and injunctive relief.

## II. ANALYSIS

### A. Judicial Reviewability of Petitioners' APA Claims

■ A determination of whether agency action is subject to judicial review under § 701(a)(2) of the APA is a jurisdictional issue. *See Sierra Club v. Yeutter*, 911 F.2d 1405, 1421 (10th Cir.1990). Before the Court addresses the merits of either parties' arguments, therefore, it first must address whether the Forest Service's denial of Petitioner's grazing permits are subject to judicial review. *See Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1448 (10th Cir.1994) (citations omitted).

"The [APA] provides that '[a] person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof,' 5 U.S.C. § 702, and [the Supreme Court has] read the Act as embodying a 'basic presumption of judicial review.'" *Id.* at 1449 (citations omitted). "This is just a presumption, however, and under § 701(a)(2) agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'" *Id.* (citations omitted). According to § 701(a)(2), "review is not to be had" in those rare circumstances where the relevant statute "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* Administrative decisions made pursuant to such a statute are precluded from judicial review. *Id.*

■ Several statutory provisions govern the issuance of grazing permits. All these provisions point to the conclusion that the issuance or non-issuance of grazing permits is a discretionary decision on the part

of the agency. The Granger–Thye Act at 16 U.S.C. § 580(1) states, in relevant part, that "[t]he Secretary of Agriculture in regulating grazing on the National Forests ... is authorized, upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock." This statute not only gives the Secretary the authority to issue permits, it indicates that those permits are issued *as he may deem proper*, not as the Court or as Petitioners deem proper. This statute leads to the conclusion that the issuance of grazing permits is a discretionary function of the Secretary.

The Taylor Grazing Act leads to a similar conclusion. The Taylor Grazing Act provides in relevant part: Grazing permits "shall be for a period of not more than ten years, subject to the preference right of the permittees to renewal in the discretion of the Secretary of the Interior...." 43 U.S.C. § 315(b) (1994). Again, the statute recognizes the discretion of the Secretary in renewing permits.

Case law also indicates that the issuance or non-issuance of grazing permits is wholly within the discretion of the Secretary. *See, e.g., Baca v. King*, 92 F.3d 1031, 1037 (10th Cir.1996) ("[W]hether to renew grazing permits and whether public lands should even be designated for grazing purposes are matters completely within the Secretary of Interior's discretion."); *United States v. Morrell*, 331 F.2d 498, 502 (10th Cir.1964) ("The issuance of the [grazing] permits was discretionary."); *Chournos v. United States*, 193 F.2d 321, 323–24 (10th Cir.1951) ("[T]he granting or rejection of the [permit] applications here was within the discretionary function of the range officials....").

The Court finds that Petitioners' first two Counts are not reviewable under the APA because the issuance of grazing permits is committed to agency discretion by law. For this reason, alone, Petitioners' APA claims should be dismissed. However, as discussed below, the Court also finds that Petitioners have not demonstrated sufficient Article III standing to maintain their action.

## B. Article III Standing

■ In their motion to dismiss, Respondents begin by challenging the Court's jurisdiction with an attack on Petitioners' Article III standing to bring their claims. Article III of the U.S. Constitution provides the basis for the doctrine of standing, a doctrine that restricts the federal court to adjudication of only actual cases or controversies. *See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Standing acts as a gatekeeper "founded in concern about the proper— and properly limited—role of the courts in a democratic society." *Id.* (citation omitted). Because Petitioners have invoked Article III jurisdiction to challenge the conduct of the executive branch, i.e., the Forest Service, the "necessity of a case or controversy is of particular import." *Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (citation omitted). "Standing to invoke the power of the federal courts is not a mere technical hoop through which every plaintiff must pass, but rather is 'a part of the basic charter promulgated by the Framers of the Constitution.'" *Id.* (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 476, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

■ To satisfy the standing requirement of Article III, the Bischoffs must demonstrate the following:

(1) that the plaintiff[s] have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) that there [is] a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the in-

dependent action of some third party not before the court; and

(3) that it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Petitioners have the burden to establish jurisdiction by clearly alleging facts that demonstrate that they are "a proper party to invoke judicial resolution of the dispute." *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

■ Even if the Court assumes Petitioners have met the first two prongs of the standing test—injury-in-fact and causation—Petitioners' claims fail because they have not met the third prong: Petitioners have not shown a likelihood that their claims will be redressed by a favorable decision of this Court.

In their claims, Petitioners ask for several forms of relief, including (1) a declaration that the Forest Service acted arbitrarily and capriciously by (a) failing to reissue the permits to Petitioners, (b) failing to allow Equitable Agri–Business the opportunity to request reissuance of the permits to Petitioners, (c) canceling the permits without considering Petitioners' applications; and (2) a decision that would order the Forest Service to issue grazing permits to Petitioners. (Am.Compl. at pp. 24–25.) Of the many remedies requested, however, only the reissuance of the grazing permits would likely redress Petitioners' claimed injuries.

The Court carefully reviewed the Complaint to discern the scope of Petitioners' injuries. Only two short, identical paragraphs allege an injury with any specificity. Petitioners allege that "they have lost the value of the grazing attributed to the North Devil's Canyon, South Devil's Canyon and Little Mountain allotments and they have lost an integral physical asset for the management of their previously connected ranches in Wyoming and Montana." (Am.Compl. at ¶¶ 86, 97.) This

injury could only be redressed if the Court required the Forest Service to reissue the grazing permits to Petitioners. "Such relief is beyond our authority to give." *Baca,* 92 F.3d at 1037. "No court has the power to order the ... Department of Interior to grant ... [a] grazing lease, because the very determination of whether to renew grazing permits ... are matters completely within the Secretary of Interior's discretion." *Id.*

In addition, even if the Court remanded this case to the agency for further consideration, there is no assurance that Petitioners' injuries would actually be remedied. Article III standing requires that it is "likely, not merely speculative, that the injury will be redressed by a favorable decision." *Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. 2130 (citation omitted). Petitioners loss of the grazing permits is not a redressable injury because, as explained earlier, it is wholly within the Secretary's discretion whether, and to whom, to issue grazing permits. Petitioners simply fail to show that a favorable ruling in this case will guarantee that Petitioners will reacquire their permits.

Because Petitioners have failed to meet their burden of establishing the third element of standing, Petitioners lack Article III standing to maintain an action in this Court. As a result, the Court lacks subject matter jurisdiction over this action and Respondents' Motion to Dismiss is **GRANTED.**

**C. Petitioners' Due Process Claims and Estoppel Claims**

Because the Court has already determined that Petitioners do not have standing to maintain this action, the Court need not address Petitioners' Due Process and Estoppel Claims (Counts III and IV of the Complaint). However, even if Petitioners had standing to pursue this action, these two claims would be unsuccessful. The Court will briefly explain why.

First, to prevail on their due process claim, Petitioners must show that they have a constitutionally protected property right of which the government deprived them without due process. *See Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d ·548, (1972). However, established law suggests that a grazing permit confers no property right upon its owner. The Taylor Grazing Act specifically states that a permit to graze livestock on public lands "shall not create any right, title, interest, or estate in or to the lands." 43 U.S.C. § 315(b) (1994). Case law also indicates that grazing permits are a privilege, not a right. *See Diamond Bar Cattle Co. v. United States,* 168 F.3d 1209, 1999 WL 88945 at *9 (10th Cir. Feb.23, 1999); *see also United States v. Cox,* 190 F.2d 293, 296 (10th Cir.1951) (although permits are valuable to ranchers, they are not an interest protected by the Fifth Amendment Due Process Clause). Finally, even if a property right attached to a grazing permit, Petitioners have no claim because they voluntarily waived the right to the permit when they sold their ranch to PFC. Because a due process claim cannot stand without a valid property interest, Petitioners' due process claim must fail as a matter of law.

Petitioners' estoppel claim would also fail. Equitable estoppel against the government is an extraordinary remedy. *See Board of County Comm'rs v. Isaac,* 18 F.3d 1492, 1498 (10th Cir.1994). In fact, the Supreme Court has yet to allow such a remedy. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 422, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (noting Court reversed every finding of estoppel against government it reviewed, citing cases). But even if the Supreme Court would allow an estoppel defense against the government, "there must be a showing of affirmative misconduct on the part of the government." *DePaolo v. United States,* 45 F.3d 373, 377 (10th Cir.1995) (quoting *FDIC v. Hulsey,* 22 F.3d 1472, 1489 (10th Cir.1994)). Affirmative misconduct is a high hurdle to overcome and requires the asserting party to demonstrate an affirmative act of misrepresentation or concealment of a material fact. *See FDIC,* 22 F.3d at 1490. Mere negligence or erroneous advice of a government agent does not reach the level of affirmative misconduct. *See id.*

Petitioners allege that Forest Service employee David Beard told Petitioners that they would be reissued their grazing permits if they followed certain procedures. Petitioners followed Beard's advice, but still were not reissued the permits. However, even assuming Petitioners' facts are true, Petitioners have not asserted facts that give rise to an actionable estoppel claim. As a matter of law, reliance on the erroneous advice of a government agent is insufficient to support an estoppel claim. *See id.* Petitioners have pleaded no facts that show an affirmative act of misrepresentation or concealment of a material fact. Therefore, Petitioners fail to state a claim on which relief can be granted and their estoppel claim must be dismissed.

## III. CONCLUSION

The Court sympathizes with Petitioners' plight in the loss of their grazing permits. Grazing the entirety of their ranch will be much more difficult, and expensive, without the Devil's Canyon and Little Mountain allotments. The Court, however, cannot create standing where none exists. For the aforementioned reasons, the Court finds that (1) Petitioners do not have standing to maintain their APA claims, (2) Petitioners do not have Article III standing, (3) even if Petitioners have Article III standing, their due process and estoppel claims fail as a matter of law. Because the Court lacks subject matter jurisdiction to hear this case, Respondents' Motion to Dismiss is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.** Each side shall bear their own costs.